JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys At Law
1125 Pacific Avenue
Atlantic City, NJ  08401
(609) 348-1125
Attorneys for Defendant Flagship

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| DANIELLE LYLES, | HONORABLE JOSEPH E. IRENAS |
| Plaintiff, | |
| -vs- | Civil Action No. 01-CV-6118 (JEI) |
| FLAGSHIP DEVELOPMENT CORP. INC., et als, | Civil Action |
| Defendants, | |

---

| | |
|---|---|
| PAULINO BONDS and GLORIA GADSON, | |
| Plaintiffs, | Civil Action No. 02-CV-1576 (JEI) |
| -vs- | Civil Action |
| FLAGSHIP DEVELOPMENT CORP. INC., et als, | DEFENDANT'S SUPPLEMENTAL REQUESTS TO CHARGE |
| Defendants, | |

---

TABLE OF CONTENTS

1.  Withdrawal of Racial Discrimination Claims.

2.  At Will Employment.

3.  The Employee Polygraph Protection Act.

4.  Curative Instruction on Witnesses Preparation by Counsel.

5.  Reasonable Certainty As To Damages.

SUPPLEMENTAL CHARGE NO. 1

Withdrawal of Racial Discrimination Claims

Ladies and gentlemen, at the beginning of this case, both the Court and counsel explained that the plaintiffs were seeking damages against the defendant on two distinct causes of action. In either instance, plaintiffs maintain the burden to prove each element of each cause of action by the preponderance of credible evidence. Specifically, I explained that plaintiffs contended that they were victims of racial discrimination at the hands of defendant Flagship. Indeed, all counsel presented opening statements to address the issue of racial discrimination under the Federal Civil Rights Act. Plaintiffs told you of particular statements made by supervisors of the Flagship, as well as certain treatment of them at the workplace, in support of their racial discrimination claims. Defendant Flagship denied those claims and maintained that plaintiffs were treated fairly and equally at all times, pointing to each of their respective and multiple promotions.

Thereafter, each of the plaintiffs testified as to their claims of discrimination, and presented further evidence of statements made by Flagship supervisors intending to prove the defendant's intent to discriminate against them because of race. For example, the plaintiffs read into the record particular

2

deposition excerpts, including that of David Love, regarding comments allegedly made by him to the plaintiffs with regard to race.

Once the plaintiffs rested, the defendants presented their case. Nothing was presented by the defendants in defense of those racial discrimination claims however. Indeed, I would not allow the defendant to present evidence for the purpose of proving that the plaintiffs were not discriminated against because of their race, and were instead treated equally and fairly at Flagship. I want you to be clear about why you heard evidence of alleged racial discrimination in the plaintiffs' case, but did not hear any evidence in defense by the Flagship.

At the close of the plaintiffs' case, all of the plaintiffs' allegations of racial discrimination were voluntarily withdrawn. At that point, all claims of racial discrimination were dismissed by the Court. As such, there was no reason for the defendants to present any evidence in defense. All claims of racial discrimination are out of this case. You are not to consider, in any way, or draw any inference whatsoever, from any evidence presented by the plaintiffs on the now dismissed claims of racial discrimination. Defendant Flagship and defendant Kaye maintained at all times that there was no racial discrimination and that the plaintiffs' claims were without merit. The Court was not required to reach the

issue, nor will you. Once a claim asserted by the plaintiffs has been voluntarily withdrawn, it simply no longer exists.

As such, I instruct you as a matter of law that defendants were never determined to have racially discriminated against the plaintiffs, and further that any and all evidence that you heard regarding the alleged racial discrimination is now meaningless. It may not, and cannot, enter into any of your deliberations, and can play no part whatsoever in your analysis, thought, determination or deliberations on the only remaining issue in this case. You are therefore instructed that you may not consider anything presented by the plaintiffs on the issue of racial discrimination, and may not consider the defendants' lack of evidence in defense on that same issue. The defendants were simply acting pursuant to my order that racial discrimination is out of this case and therefore no evidence on the topic by way of the defense would be necessary or allowed.

## SUPPLEMENTAL CHARGE NO. 2

At Will Employment

In the course of opening statements, you heard all counsel refer to the term "at will" employment. The term "at will" employment defines the legal relationship between an employer and an employee in the State of New Jersey and pursuant to Federal law.

In this case, none of the three plaintiffs had a contract of employment with defendant Flagship. Indeed, as a matter of law, none of the plaintiffs had any security or guarantee that their respective job could not be terminated at the will of the employer. The law is that each of these plaintiffs served "at will". "At will" employment means that employees can quit their jobs at any time and for any reason. The status of an "at will" employee also means that their employer can fire them at any time, and for any reason, for good cause, or for no cause whatsoever.

As such, if, by virtue of your deliberation and findings, you decide that defendants are not liable to the plaintiffs under the Federal Employee Polygraph Protection Act, as I will explain that in a moment, you must find for the defendants. In other words, unless the plaintiffs prove by the preponderance of evidence that they are entitled to a finding of liability and damages against these defendants under the Federal Employee

Polygraph Protection Act, you must find no liability on the part of these defendants, since each of the plaintiffs could have been fired at any time and for any reason.

## SUPPLEMENTAL CHARGE NO. 3

The Employee Polygraph Protection Act

Ladies and gentlemen, the only remaining basis upon which these plaintiffs can recover damages against defendants Flagship and Kaye is pursuant to the Federal Employee Polygraph Protection Act.

The Congress of the United States passed the Employee Polygraph Protection Act in June of 1988. The law prohibits a private employer from directly or indirectly suggesting or requiring any employee to submit to any lie detector test, and also makes it unlawful for an employer to take action against an employee who refuses to take a lie detector test.

The law further prohibits an employer from taking adverse employment action, in this case, termination of the plaintiffs, based upon any lie detector test utilized as a basis to terminate an employee. The particular prohibitions of the Act are specifically stated in the United States Code as follows:

(1) It is unlawful for any employer to directly or indirectly require, request, suggest or cause any employee to take or submit to any lie detector test; additionally,

(2) It is unlawful for any employer to use, accept, refer to or inquire concerning the results of any lie detector test of any employee; additionally,

(3) It is unlawful for any employer to discharge or

7

threaten to take adverse action against any employee who refuses, declines or fails to take or submit to any lie detector test. Finally, it is unlawful for any employer to discharge any employee "on the basis of the results of any lie detector test".

The purpose of the Employee Polygraph Protection Act is to protect an employee's privacy and to prevent the use of a lie detector test from being a determining factor in an employee's discharge or other discipline at the workplace given the unproven reliability of lie detectors. While the Congress provided certain exceptions under the Act, which under limited and precise circumstances, make the administration or request for a lie detector lawful, none of those exceptions or exemptions apply in this case. For example, Exhibit "D-14" is a poster which was hung in various places throughout defendant Flagship's property. Federal law requires that employers hang such posters so that employees are aware of their rights under the Employee Polygraph Protection Act and various other Federal and State laws. The poster is in evidence, and you may consider it for whatever purpose you deem appropriate. You may not however find an exception or exemption as referred to on that poster in this case. The poster refers to an exception for embezzlement or theft investigations by an employer at the workplace. While the Act does contain such an exception, I instruct you as a matter of law that the exception is not

capable of providing a defense to defendants in this case. [You may however consider whether, for example, defendants thought or believed the exception may have applied to their circumstances in considering the issue of punitive damages. As I will instruct you in a moment, the elements of punitive damage require that you find by the preponderance of evidence that the defendants acted with malice or reckless indifference to the federally protected rights secured to all employees under the Employee Polygraph Protection Act. As such, if you believe that the defendants harbored a good faith, yet mistaken belief, that the use of a polygraph for Charlotte Blake, or alternatively a request as to whether the three plaintiffs would be willing to submit to a polygraph, was not in violation of the Employee Polygraph Protection Act, you may decide that such circumstances do not equate with malice or reckless indifference. Except for this limited purpose, testimony as to the existence of such an exception and the information on that poster regarding an exception are irrelevant and have no place in your deliberations].[1]

In this case, the plaintiffs maintain that their rights under the Employee Polygraph Protection Act were violated and that the defendants should be made to pay damages because of

---

[1] Assuming the Court does not grant defendants' R. 50 Motion excluding punitive damages.

9

that violation. The plaintiffs argue two distinct basis for the alleged violation. First, that the polygraph result of Charlotte Blake was used by the Flagship "as a basis to terminate their employment". Secondly, that Investigator Romanowski's inquiry to each of the plaintiffs as to whether they would be willing to take a polygraph test was an independent violation. Defendants do not deny, and there is no issue of fact with regard to both issues. Both parties agree that Charlotte Blake was polygraphed and that the result of Charlotte Blake's polygraph was made known to Bruce Kaye. Further, both parties agree that Investigator Romanowski did make an inquiry of each plaintiff with regard to their taking a polygraph test. In both instances, the federal statute was violated. It does not matter that Charlotte Blake volunteered, requested or even begged for the polygraph. The law does not excuse an employer's conduct of a polygraph test, even in the face of an employee requesting one.

Although I just told you that Charlotte Blake's polygraph, as well as the inquiry to the plaintiffs as to whether they would take a polygraph, were both unlawful actions by defendant Flagship, the plaintiffs must prove all elements of their cause of action under the Employee Polygraph Protection Act to collect compensatory damages. Specifically, each plaintiff must prove by the preponderance of credible evidence that defendants

10

violated three specific elements in order for you to even reach the question of compensatory damages. In other words, unless the plaintiffs prove by the preponderance of the credible evidence all three separate and distinct elements of a violation, they are entitled to no relief in this Court. Merely because the employer's action in polygraphing Charlotte Blake and inquiring of the three plaintiffs to take a polygraph was a violation, does not on that basis alone make the defendants liable to pay damages.

Instead, an actionable claim under the Employee Polygraph Protection Act requires proof by the preponderance of the credible evidence of three elements:

(1) Plaintiffs must prove that the defendants were engaged in or effecting commence. On this element, there is no dispute. Defendant Flagship was in the business of selling timeshares to individuals residing in at least the Tri-State area. As such, the element of either engaging or effecting commence is proven. I therefore instruct you, as a matter of law, that the plaintiffs have carried their burden in proving an effect on commence.

(2) The second element to establish an actionable claim under the Act is that the employer committed one or more of the prohibited defined in the statute. Specifically, that Charlotte Blake was given a polygraph and the result of that test was made

11

known to defendants. Secondly, that an inquiry was made to each of the plaintiffs as to whether they would submit to a polygraph test. Both of those actions are prohibited by the law, and the defendants do not deny that. As such, I instruct you, as a matter of law, that the second element is proven and you need not deliberate it further.

(3) The third element the plaintiffs must prove by the preponderance of evidence is in dispute. On this element, you must decide the facts. The third element the plaintiffs must prove is one of causation. Each of the plaintiffs contend that either the polygraph of Charlotte Blake or the inquiry of them to take the polygraph, and their subsequent refusal to take the polygraph, was individually or jointly, motivating factors in their terminations. If you decide that the decision to terminate one, two or all three of the plaintiffs was the product of both legitimate and illegitimate motives, the burden is then placed upon the defendant to show, by a preponderance of the credible evidence, that it would have made the same decision to terminate, even if it had not taken into account the Blake polygraph or plaintiffs' refusal to submit to a polygraph test. In assessing whether the polygraph violations played a motivating part of defendants' decision to fire the plaintiffs, you must decide what the truthful reason for the plaintiffs' termination was. In order to do that, you should determine why

12

the plaintiffs were terminated. If you find, as a matter of fact, that one of the motivating reasons for the plaintiffs' termination was based upon either the results of Blake's polygraphs or plaintiffs' refusal to take a polygraph, the discharge of the plaintiffs was unlawful. As such, your mission in deciding whether the polygraph violations were motivating factors in the decision to fire the plaintiffs, requires you to determine whether one of the truthful and actual reasons for the termination was because of the polygraph taken or the requests of plaintiffs. In order for the plaintiffs to satisfy the third element, you must find that the polygraph violations were a motivating factor in each of their terminations by the preponderance of the credible evidence.

Alternatively, if you find that the decision to terminate was a product of both legitimate and lawful reasons, and illegitimate polygraph reasons, you must then consider whether defendants have proved that they would have made the same decision regardless of the Blake polygraph and regardless of plaintiffs' refusal to take polygraphs. In other words, even given admitted violations of the Employee Polygraph Protection Act, the defendants still are not liable to the plaintiffs under the Act, unless the plaintiffs prove that the polygraph taken or those requested were motivating factors in the employers' decision to terminate. Conversely, if you find the employer

13

would have terminated the plaintiffs for legitimate and lawful reasons, such as the defendants' suspicion of plaintiffs' involvement in theft, or disruption and preoccupation by its employees with the issue of theft, or even a distraction from the work of the employer, and such reasons are the only basis for termination, you must find that the polygraph violations were not motivating factors in the termination of the plaintiffs.

## SUPPLEMENTAL CHARGE NO. 4

Curative Instruction on Witnesses Preparation by Counsel

In the course of trial, you heard certain questions with regard to whether a particular witness spoke with counsel or was given copies of their statements made in 2001. I instruct you, as a matter of law, that there is nothing inappropriate in an attorney representing any party in a lawsuit from interviewing, speaking with or providing copies of that witness' statement in advance of their trial testimony. Quite to the contrary, it is the duty of an attorney representing parties in this Court to properly prepare witnesses for trial testimony. In any case where the events occurred years earlier, attorneys who fail to speak with witnesses they intend to call in the course of trial, or provide witnesses with copies of their own statement given years earlier, would be derelict in their duty to their client. I instruct you, as a matter of law, that the conduct of all counsel in this case was entirely proper and appropriate and you should not interpret any questions or testimony approving any bias or undue influence on any witness. You may not make any findings or draw any inferences to the contrary.

## SUPPLEMENTAL CHARGE NO. 5

Reasonable Certainty As To Damages

As to damages, you heard testimony from each of the plaintiffs with regard to the wages and income they made while employed with the defendants. You also heard each of the plaintiffs testify with regard to their alleged lost wages following their termination from employment. Each of the plaintiffs argue that since they presented evidence as to their income immediately before their discharge, namely what they earned in 1999, they are entitled to collect damages for like or higher amounts for the years they were either unemployed or employed at a lesser income level.

If you find that defendants are liable to the plaintiffs under the Employee Polygraph Protection Act, the plaintiffs are lawfully entitled to an award for lost wages. In considering any such award for lost wages however, you should consider a number of factors. Firstly, whether the plaintiffs have mitigated their own damages as I have already instructed. Secondly, whether the plaintiffs have proved by the preponderance of credible evidence that the amount sought by plaintiffs was proven with reasonable certainty. The plaintiffs cannot secure an award of damages based upon conjecture or speculation.

It is appropriate for you to consider the circumstances of

16

each plaintiff, the nature of their employment, the possibility that they would not have remained in the employ of the defendants up to the present day, as well as changes in the employers' business, such as the reduction in the company's sale of timeshare tours because of the economy and market conditions. In sum, the assessment of lost wages requires consideration of all facts and circumstances you deem appropriate in order to arrive at a fair and just award.  You are not required to accept either side's calculation or argument on damages, but instead should be guided by your own recollection of the facts and observance to what you find plaintiffs would have earned, if anything, because of their discharge.

Instructions — Unemployment Benefits

You heard evidence in this case regarding π's - Bond's application, denial & appeal for Unemployment compensation benefits. Much of the evidence had to do with Δ-Flag's report to NJ unemployment as to the reason for π-Bond's termination. The documents submitted by Flag, as well as the document presented by Bond are all in evidence.

A small part of the testimony on the same topic dealt with π's Appeal & a determination of NJ Unemployment that π Bond was entitled to collect benefits. One of the Exhibits also explains that determination. The determination made by NJ Unemployment however, is entirely irrelevant to your determinations of fact. The NJ Unemployment decision is NO evidence whatsoever, that π Bond or any of the π's were wrongfully terminated. The standard used by Unemployment has no relationship to the law governing your decision in this case.

I therefore instruct you that you may NOT consider the Unemployment benefits decision as evidence of any wrongdoing by Δ Flag, or as evidence at all on the issue of whether π's were properly or improperly terminated from their jobs. The only relevance of that testimony was the information allegedly conveyed by Δ as the reason for π's termination. It is for you to decide what is or is not relevant, and you may give whatever consideration, if any, you deem appropriate on this issue.